McLUCAS, P. J.
Plaintiffs allege in their complaint that for more than fifty years last past there has been in exist *Supp. 782 ence and continuous use an irrigating water ditch system known as the Banta ditch; that throughout the entire period of its existence the said ditch system has been owned and operated through a mutual voluntary association known as the Banta Ditch Association and which consists of the land owners within said irrigation district; that a meeting of the members of the association was held on March 4, 1929, and that at said meeting it was decided by unanimous vote that immediate steps should be taken for acquiring a tract of water-bearing land, sinking a well for the development of water and equipping the same with the necessary pump and power plant, and that for the purpose of defraying the costs thereof an assessment should be levied against the irrigators and members of the association in proportion to the acreage operated by them under the ditch system, to be collected in three installments over a period of three years, at such time as the board of trustees should determine. It is further alleged that pursuant to such action the plaintiffs as such board of trustees acquired a water-bearing tract, sank a well and equipped the same, and did find and determine that the amount of the assessment necessary to defray the cost thereof was the sum of $17.54 per acre; that furthermore the water charge or assessment should be levied for the use of water by its members at the rate of thirty cents per hour; that the lands owned by defendants are situated within said Banta ditch district and supplied with water, therefrom; that it was agreed between the Banta ditch irrigators that the expense of maintaining, repairing and operating said ditch system should be apportioned between the irrigators in proportion to their acreage, which should be a charge against their respective properties and be binding upon their successors in interest. Plaintiffs pray for a judgment against the defendants, jointly and severally, in the sum of $1316.10, with interest at seven per cent per annum from November 4, 1929, and that it be adjudged and decreed that said obligation is a lien upon the property described in the complaint, and that said lien may be enforced in the manner provided by law for the sale of property under execution, and that plaintiffs recover their costs, and whatever else may be just. The trial court awarded its judgment against defendant Mary Phelan in the sum of $111.80, against defendant Daniel Phelan in the sum of $602.58, and against *Supp. 783 defendant Edward Phelan in the sum of $74.11. The plaintiffs appeal from those portions of the judgment in so far as it fails to adjudge that each of the defendants is jointly and severally liable to the plaintiffs for the full amount prayed for in the complaint, and in so far as said judgment, fails to adjudge and decree that the full amount of said indebtedness is a lien upon the property described in the complaint.
The enforcement of liens is a well-recognized function of courts of equity. (Hibernia etc. Soc. v. London etc. Ins. Co., 138 Cal. 257 [71 Pac. 334] ; Kreling v. Kreling, 118 Cal. 413, 419 [50 Pac. 546].) The test of the jurisdiction of a court is ordinarily to be found in the nature of the case, as made by the complaint, and the relief sought. (Becker v. Superior Court, 151 Cal. 313, 316 [90 Pac. 689].) In Urton v. Woolsey, 87 Cal. 38 [25 Pac. 154], the complaint set forth a written contract between plaintiff, as vendor, and defendant, as vendee, for the sale and purchase of certain lands, and averred facts showing plaintiff’s right to enforce and foreclose a lien upon said land for the purchase money. There was a prayer for the foreclosure of the lien. It was held that the action was one to enforce a lien upon real property. Likewise the complaint herein sets forth a cause of action for the foreclosure of a lien on real estate, and the superior court would have jurisdiction, a suit for such foreclosure being a suit in equity. (Curnow v. Blue Gravel etc. Co., 68 Cal. 262, 264 [9 Pac. 149].) The complaint was filed March 15, 1930, and the judgment was entered and filed on July 6, 1931. The municipal court was without jurisdiction to foreclose a lien on real estate, except in “actions to enforce and foreclose liens of mechanics, materialmen, artisans and laborers, where the amount of such liens is two thousand dollars or less”, and the municipal court had no jurisdiction of cases in equity, except “when pleaded as defensive matter or by way of cross-complaint in any case at law commencing in the municipal court, of which it has exclusive jurisdiction”. (Stats. 1929, p. 838.) There was entire lack of jurisdiction of the municipal court in this case, but no appeal being taken by defendants, we cannot reverse the judgment against defendants. It is also well settled that upon an appeal from a portion of the judgment only, the appellate court has no jurisdiction to reverse *Supp. 784 any part of the judgment, except the part to which the appeal is directed. (Lake v. Superior Court, 187 Cal. 116, 120 [200 Pac. 1041].) Though we cannot reverse the judgment against defendants, when defendants have taken no appeal, we can and do refuse to grant the plaintiffs additional relief where the trial court had no jurisdiction whatever to grant a judgment in an equity case of this character.
The judgment is affirmed, respondents to recover their costs of appeal from appellants.
Shaw, J., and Craig, J., pro tem., concurred.