## BURRUS MILL & ELEVATOR CO. v. KINGFISHER COLLEGE.

No. 27664. Feb. 15, 1938.

Rehearing Denied March 8, 1938.

T. R. Blaine, for plaintiff in error.

Thurman & Thurman (Joseph G. Rucks, of counsel), for defendant in error.

HURST, J. This action involves the validity of a garnishment proceeding growing out of the following facts: In 1923, the Oklahoma Mill Company executed certain promissory notes in the approximate sum of $200,000 secured by a real estate mortgage. The notes and mortgage were subsequently assigned to W. B. Newsome, plaintiff. In 1927, the Oklahoma Mill Company executed notes for approximately $100,000 to Kingfisher College and others, and secured the same by a second mortgage. In 1928, plaintiff commenced an action to foreclose his notes and mortgage. The second mortgagees and other parties asserting various interests were made party defendants. At the instance of the second mortgagees, a receiver was appointed to collect rent from the lessees in possession of the mill, and was further "directed to investigate into the affairs of the Oklahoma Mill Company to ascertain if there are any other assets besides the above which can be made subject to the payment of the debts of said Oklahoma Mill Company in this cause. and to report the same to this court." Judgment was rendered in favor of plaintiff against the Oklahoma Mill Company on the promissory notes, and such judgment was decreed a first and prior lien on the mortgaged property and foreclosure ordered. Kingfisher College, under a cross-petition, was also granted a money judgment against Oklahoma Mill Company and foreclosure of its second mortgage. Order of sale was issued and the premises were sold to plaintiff under the decree of foreclosure, leaving a deficiency judgment in favor of plaintiff in excess of $10,000. The money judgment in favor of Kingfisher College was partially satisfied by applying on it certain money collected by the receiver, but there remained unpaid approximately $80,000. The receiver was never discharged, but he did nothing more. Thereafter the plaintiff assigned his deficiency judgment to the Bob White Flour Mills, Inc., and conveyed title to the property which he had purchased at the foreclosure sale. Subsequently, on December 17, 1931, after execution had been issued and returned "no property found," Kingfisher College filed its affidavit in garnishment alleging that the Chicago, Rock Island & Pacific Railway Company was indebted to the Oklahoma Mill Company and asking that the railway company answer certain interrogatories attached to the affidavit. An order was issued accordingly, and the railway company answered, in substance, that as a result of an order of the Interstate Commerce Commission reducing certain freight rates, the Oklahoma Mill Company had been charged excessive rates to the extent of about $8,000 or $9,000 on shipments made by it over the railway lines. Kingfisher College filed notice that it took issue with the garnishee on certain of its answers to the interrogatories, but before a hearing was had, the Bob White Flour Mills, Inc., filed a motion to quash and vacate the garnishment proceedings. This motion was overruled, and the Bob White Flour Mill, Inc., appealed to this court, where the appeal was dismissed on the ground that the order appealed from was interlocutory (Bob White Flour Mills v. Kingfisher College, 175 Okla. 330, 52 P.2d 728). Another garnishment affidavit was filed on February 4, 1933. and a second order was issued. While the appeal was pending, the Bob White Flour Mills, Inc., assigned all of its interest to the Burrus Mill & Elevator Company, which was, by stipulation, substituted in the action in place of its predecessor.

It appears that from 1923 to 1928 the Oklahoma Mill Company was a member of the Oklahoma Millers' League, and its successor, the Oklahoma Millers' Association, and in 1923 the league commenced a proceeding before the Interstate Commerce Commission to secure a reduction in freight rates. From 1928 to 1933, the Bob White Flour Mills was a member of the association. A retroactive reduction in rates was awarded, and on June 30, 1930, an order was made by the commission finding that the Oklahoma Mills Company was damaged in the amount of the difference between the charges paid and those which would have accrued under the order of the commission, and that they were entitled to reparations, with interest, for the years 1924, 1925, 1926 and 1927. The specific amount of the award, however, was not at that time determined. But on February 8, 1932, pending the appeal from the garnishment proceedings, the Interstate Commerce Commission entered an order, later amended by a nunc pro tunc order, awarding $8,873.57 to the Oklahoma Mills Company. and directing that it be paid by the Rock Island Railway Company and other named carriers. On March 16, 1933, by stipulation, the sum then amounting to $12,224.06, by reason of interest, was paid into court and the railway companies involved were released. This is the fund involved in the present appeal. Subsequently,

222

the mandate of the Supreme Court was spread of record. Issues were made up between Kingfisher College and the Burrus Mill & Elevator Company in the garnishment proceeding, and the court sustained the garnishment and ordered the clerk to pay over to Kingfisher College the entire amount paid into court by the railway companies. From this order the Burrus Mill & Elevator Company brings this appeal, setting out 14 assignments of error which it presents under 18 propositions.

■ The first three propositions are in substance as follows: (1) That the Burrus Mill & Elevator Company is entitled to the fund as a reward for the industry, efforts, and expense of the Bob White Flour Mills in making the fund available; (2) that Kingfisher College having done nothing to make the fund available, it is not equitable to permit it to appropriate the fund by garnishment; (3) that the Bob White Flour Mills having relied on the statement of the judge of the trial court to the effect that the fund would be handled through the receiver, and having refused to discharge the receiver for that reason, it would be inequitable to permit Kingfisher College to appropriate the fund by garnishment. They rely upon Sullivan v. Rosson (N. Y.) 119 N. E. 405, 4 A. L. R. 1400, to the effect that where a junior mortgagee secures the appointment of a receiver for rents and profits, he is entitled to priority over a senior lienholder as to such rents and profits, as a reward for his diligence. They rely upon other cases holding that the enforcement of a lien is an equitable function, and announcing the following principle:

"Courts of equity will never interfere when the law has given one class of creditors preference, but will recognize and enforce antecedent liens on the property according to their priorities, but, upon clear affirmative evidence, they may prevent judgment creditors from retaining an advantage secured through misrepresentations or other unconscientious device." Citing Holbrook v. Phelan (Cal. App., Supp.) 6 P.2d 356; Casserleigh v. Spar Consol. Mining Co. (Colo. App.) 128 P. 863, 864.

The college does not question the soundness of these authorities, but contends that the propositions for which they are cited are not supported by the facts in the instant case. With this contention we agree. It is argued that the Bob White Flour Mills contributed to the payment of the attorney who prosecuted the claims before the Interstate Commerce Commission, while the college contributed nothing. But it appears from a stipulation contained in the record that the attorney presenting the claims before the commission was representing the Oklahoma Millers' League, and, as it was afterwards known, the Oklahoma Millers' Association. It is true that the Bob White Flour Mills was a member of the league, but only from 1929 to 1933. Before that time the membership was in the Oklahoma Mills Company, and by 1929 the principal part of the litigations was completed. These facts are not sufficient to give rise to the equitable principles suggested. It is argued that the college sought to have the receiver employ a man to collect the fund in question on a percentage basis, but that this was abandoned because the Bob White Flour Mills agreed to supply the necessary information and data without charge. It is also asserted that the receiver was retained for the express purpose of disbursing the fund, and that relying on the receiver, the assignees of plaintiff did nothing to acquire it for themselves. The testimony in this connection was conflicting and was given as the recollection of those present at the hearing where the conversations were alleged to have taken place. It is apparent from the record that the memories of the witnesses were hazy and directly contradictory in this regard. We therefore conclude that the trial court was justified in holding that these assertions are contrary to the facts. Garnishment is a statutory proceeding by which a diligent creditor may legally obtain preference over other creditors. 12 R. C. L. 848; 28 C. J. 255. The assignments of error in this connection are not well taken.

■ The Burrus Mill & Elevator Company attacks the validity and regularity of the garnishment proceedings, and present six propositions wherein it is contended that the proceedings are void. Neither the Oklahoma Mill Company, the judgment debtor, nor the Rock Island Railway Company, the garnishee, objected to the sufficiency or validity of the garnishment proceedings. The motion of the Bob White Flour Mills, Inc., to quash and vacate the garnishment, into which the Burrus Mill & Elevator Company was substituted by stipulation in this court, was disposed of and the mandate spread of record. Thereafter the Burrus Mill & Elevator Company filed an interplea and "claim to funds impounded" in which it asked that it be adjudged the owner of the fund and alleged that the proceedings were invalid for the reasons presented here. The position of Kingfisher College is that each objection is without merit, but that in any event, the intervener, having voluntarily entered into the action and itself claimed the

fund, is in no position to question the validity of the garnishment proceedings. Where the intervener makes a special appearance by a motion to quash or vacate the proceedings, it is usually held, in both garnishment and attachment, that jurisdictional objections are available to him, in a contest with the plaintiff, but mere irregularities that would only be ground for reversal on appeal by defendant are waived. 28 C. J. 381; Ballew v. Young (1909) 24 Okla. 182, 103 P. 623. In the instant case, the intervener had the right to enter a special appearance and ask the court to quash the garnishment, but instead of doing so, it made a voluntary general appearance and submitted itself to the jurisdiction of the court, seeking an affirmative order beneficial to itself, that is, that it be adjudged owner of the fund. Our garnishment statutes were adopted from Kansas, and it is there held in Kennedy Butter Tub Co. v. First & Hamilton Nat. Bank of Ft. Wayne, Ind., (1924) 222 P. 754, that "where a party entered his voluntary appearance and appealed to the general jurisdiction of the court for an affirmative order beneficial to himself, he was not in position to assert that the original proceedings in the action were void." This rule is applicable here, and for that reason it is unnecessary to discuss each of the propositions presented to show the invalidity of the garnishment proceedings.

By its tenth, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, and seventeenth propositions, the Burrus Mill & Elevator Company contends in substance that it is entitled to the fund in controversy for the reason that it was covered by the mortgage and was in the legal possession of the receiver, and inasmuch as he was appointed without direction as to its payment, it must be paid in order of priority of the mortgage liens. The twelfth and thirteenth propositions go to the question of whether the first mortgage lien covered the fund in controversy so as to give a priority thereon to the holder of the first mortgage, or his assignees. It is contended that the "rents and profits" of the Oklahoma Mill Company were pledged by the mortgage and that the term "rents and profits" is synonymous with the term "income" or "net income" of an estate, and that the money received from the Rock Island Railway Company was such income or rents and profits as contemplated by the mortgage. A careful examination of the mortgage, however, discloses that "rents and profits" of the mortgagor company were not pledged thereby. The mortgage covered certain lots in the city of Kingfisher, and "all other real estate of the mortgagor which it now owns or may hereafter acquire, * * * it being the intention to include in this conveyance all improvements now upon said premises or erected or placed thereon at any time during the life of this mortgage, as well as all machinery, equipment, fixtures, tools and appliances situated upon said premises or in the building, structures or improvements thereon, or thereafter thereon, and all privileges, easements, and rights enjoyed in connection therewith; the whole constituting the complete plant and mill of the mortgagor in Kingfisher." The mortgage also originally covered the good will and trade names of the mortgagor, including copyrights and trademarks, but these were subsequently released. The only reference to rents found in the mortgage is in that paragraph which provides that upon default, or breach of the terms and conditions of the mortgage, the owner of the indebtedness "shall be entitled to have a receiver appointed to take charge of the premises, to rent or operate the same, under the direction of the court and any amount so collected or received by such receiver shall be applied, under direction of the court, to the payment of any judgment rendered." The owner of this mortgage did not apply for a receiver, but, on the other hand, resisted the application for a receiver presented by the second mortgagees, and we cannot construe this provision as pledging all the income or rents and profits which may accrue to the mortgagor. Such being the case, the first and second mortgagees, having both obtained deficiency judgments, were of equal standing, and neither had a prior lien upon any money or property subsequently accruing to the mortgagor, not covered by the mortgage. In 41 C. J. 627, it is said:

"A mortgage which does not expressly pledge the rents and profits of the mortgaged premises as security for the payment of the debt gives the mortgagee no lien or claim on them, and so long as the mortgagor remains in possession he is entitled to receive them to his own use or to assign them, without liability to account to the mortgagee for them, and this right continues not only until default, but even after foreclosure, where the mortgagor remains in possession during the statutory period allowed for redemption; and this principle has been carried so far as to deny the mortgagee the right to call anyone to account for the mortgaged premises."

In the instant case, the lessee of the mortgagor remained in possession and operated the mill until the foreclosure sale, and the first mortgagee did not take possession through a receiver. The receiver, appointed

at the instance of the second mortgagee, was not a general receiver, but was appointed for a specific and limited purpose. He was to collect a specified rent from the lessee of the mill, and was further directed to investigate for additional assets "which can be made subject to the payments of the debts of said Oklahoma Mill Company in this cause," or, in other words, which are covered by either mortgage, and report to the court. No additional authority was given. It does not appear that the fund in controversy was reported to the court, or that the receiver was authorized to proceed with its collection. He did not in fact take actual possession at any time. The rent which he did collect, and which he was authorized to collect, was specified, and other rents or income were therefore excluded. 53 C. J. 98, sec. 122. Neither the first nor the second mortgage covered this fund, and the receiver would have no authority to take possession of any property not covered by the mortgages, and thereby not involved in the litigation, this not being a general receivership. Tardy's Smith on Receivers (2d Ed.) 625; High on Receivers (4th Ed.) p. 814; Thomas v. Armstrong (1915) 51 Okla. 203, 151 P. 689. As the fund was thus not at any time in the possession of the receiver, the tenth proposition, that the fund could not be reached by garnishment until after the discharge of the receiver, is without merit. The property of the mortgagor, being free from the receivership, was subject to garnishment by any judgment creditor. Tardy's Smith on Receivers, secs. 30, 31.

This also disposes of the eleventh proposition, to the effect that the attempt of Kingfisher College to reach the fund by garnishment is antagonistic to the receivership and is a waiver of its claim to the fund by reason of the receivership.

The eighteenth proposition urged for reversal is that the amount of the supersedeas bond, fixed by the court at $24,400, is excessive, unreasonable, and made for the purpose of preventing an appeal. It is argued that, since the fund due from the railway company has been paid into court, and no judgment could be rendered against the Burrus Mill & Elevator Company other than for costs, no such bond is necessary. No reversible error has been shown by this assignment, for the reason that the bond has been made and the appeal has not been prevented. The error, if any, may be corrected by application to this court as specified in Re Epley (1901) 10 Okla. 631, 64

P. 18. but no such application appears in the record.

The judgment is affirmed.

OSBORN, C. J., and RILEY, PHELPS, CORN, GIBSON, and DAVISON, JJ.. concur. BAYLESS, V. C. J., and WELCH, J.. absent.